IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY EASON, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | Civil Action No. 04-1698 |
| | ) |
| | ) |
| DEL MONTE FOODS, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiff claims that Defendant, her former employer, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. P.S. § 951, et seq., and the Equal Pay Act,  29 U.S.C. § 206 (d), by discriminating against her based on her gender and race, and retaliation for complaining to management about her work situation.[1] Plaintiff also claims that she suffered hostile work environment harassment.

---

[1]Plaintiff's Brief mentions First Amendment retaliation, but her Complaint refers only to Title VII retaliation.

In particular, Plaintiff claims racial discrimination in the failure to promote, hire, or interview her for several positions, her assignment of job title, and the amount of her compensation.  She also claims gender discrimination with respect to failure to hire, as well as compensation.  Finally, she claims illegal retaliation for writing intra-office complaints, and hostile work environment harassment in the nature of, for example, exclusion from meetings and removal of equipment from her office.

Before the Court is Defendant's Motion for Summary Judgment on all of Plaintiff's claims.[2]  Defendant argues that Plaintiff's claims fail at either the <u>prima facie</u> stage or otherwise.  Plaintiff counters, primarily, that the evidence demonstrates that Defendant's proffered reasons for its actions are pretextual.

For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I.  <u>FACTUAL NARRATIVE</u>

Unless otherwise noted, the following facts are undisputed.   Moreover, several facts, immaterial for summary judgment purposes, are included by way of background.

Plaintiff, an African-American woman, began working for H.J. Heinz Company ("Heinz") in March of 2000 as a Fish Settlement Accountant.  On June 13, 2002, Heinz entered into an agreement with Defendant, pursuant to which certain Heinz units

---

[2]Because Defendant's Motion clearly applies to all the counts of Plaintiff's Complaint, I address several aspects of the Complaint that Defendant's supporting Memorandum does not specifically contest.

and brands would be spun off and merged into a subsidiary of Defendant. In 2002, Plaintiff spoke with her supervisor about wanting to do something new in the new environment. Her supervisor conveyed her interest to John Balbach. Defendant's documents reflect that Plaintiff received a four percent raise in August of 2002, but Plaintiff testifies that she did not receive such a raise.

Soon thereafter, Plaintiff accepted Balbach's offer to become a Co-Pack Accountant in the post-acquisition company. She reported directly to Balbach when she first began as Co-Pack Accountant. At the time that Plaintiff accepted the position, Anita Sutara, a white female, was the only other person slated to hold a Co-Pack Accounting position. According to her offer letter, Plaintiff's transition into that position was to become effective September 1, 2002, but Defendant's business records indicate that she transitioned into the position effective October 1, 2002.

In August of 2002, Balbach notified Steve Reyburn, another supervisor, that he planned to upgrade one of the Co-Pack Accountant positions to Co-Pack Analyst, and planned to place Sutara in the position.[3] He planned to do this, he stated, because certain additional responsibilities, including forecasting, would be added to that position. On September 9, 2002, a Personnel Action Notice ("PAN") was prepared for Sutara. There is a note on the PAN "Chg job title per Frank Balint 10/3/02 SK." It indicates "status change" in "job title" and "promotion." "Current position" is listed as Co-Pack Accountant, and proposed position is listed as Co-Pack

---

[3]James Kennedy testified that in connection with the harmonization process, job titles did not determine salary grades. However, post-harmonization, it appears that job titles were linked with salary grade levels.

Analyst, with a line through the term "Co-Pack" and "Financial" written above it.  The facts submitted by the parties do not indicate Balint's identity or significance; nor do they clarify all of the notations on the PAN.

Subsequently, as an incentive to get Sutara to stay in Balbach's department, in October, 2002, she was promoted to a Financial Analyst position and received a five percent raise.   Plaintiff testified that she heard Balbach tell Sutara that she was going to have the best of both worlds; a new title but the same position.[4]

On December 20, 2002, Plaintiff asked Balbach whether her title, like Sutara's, would also be changing; Balbach responded that Sutara's title had changed because she would be taking on new responsibilities.  Balbach told Plaintiff and others that Plaintiff and Sutara did not perform the same duties as Plaintiff.  After she became a Financial Analyst, however, Sutara's job duties remained unchanged, and that she continued to perform the same duties as Plaintiff.

In 2003, Defendant developed a new compensation structure and developed a process known as "harmonization," by which James Kennedy, Manager of Compensation, took former salary midpoints from Heinz, and mathematically found the closest numeric match for Defendant's midpoints, then found the corresponding job grade.   Because of this mechanical process, an inaccuracy in a Heinz midpoint would lead to an incorrect salary grade under the new compensation system.   Balbach was not involved in the harmonization process.

---

[4]Defendant labels this statement as hearsay, but the parties do not develop an argument that fully addresses the statement.

Kennedy testified that a data entry error at Heinz resulted in the wrong job code for Sutara on her PAN, with the incorrect midpoint.  Plaintiff counters that the incorrect grade level was not a data entry error, but was done at Balint's instruction.  Sutara's last documented Heinz salary midpoint corresponded to a grade 12 at Defendant, and Sutara told Plaintiff of her salary grade level.  By e-mail dated September 12, 2003, Plaintiff advised Human Resources that she wanted her job title to be reevaluated; Plaintiff was referred to her manager.  At some point, Balbach observed that Sutara's grade level looked high; he was ultimately informed that grade level changes would have to go through a process of writing job descriptions and submitting them for review.  On October 2, 2003, Balbach requested everyone in his department to write and submit to him job descriptions.  Plaintiff and Sutara both did so; Plaintiff did so on or about November 7, 2003.

In September of 2003, Plaintiff received a one percent merit increase because she was rated as a "contributor," which was the lowest of Defendant's employee evaluation tiers.  In or about September of 2003, Defendant had compressed Heinz's five-tier evaluation system into a three-tier system.   Supervisors were required to adapt ratings previously made under the five-tier system, and compress them into one of the three tiers.  The three-tier system utilized forced distributions; evaluators were required to place a certain percentage of employees into each tier, including the lowest "contributor" rating.  In July of 2003, Plaintiff's rating under the Heinz system had been 2.88, on the low end of the "meets" standard, which ranged from 2.70 to 3.69.  A white male in the finance department was rated a "contributor," like

5

Plaintiff, and received a one percent merit increase in 2003.  Plaintiff does not claim that this rating was discriminatory.  Sutara also had a "meets expectations" rating under the Heinz system, but Sutara received a larger raise - $1400.00 versus Plaintiff's $400.00 raise.[5]   Steve Reyburn made the decision about Plaintiff's raise, but Balbach gave him some input.

By February of 2004, Human Resources determined that Plaintiff and Sutara were performing essentially the same functions.  Kennedy then conducted a market evaluation of the position in order to determine a salary grade level, and determined that he could support a grade 10 or 11.  Thereafter, Plaintiff was told that her grade was being increased, and Sutara's decreased, to a grade 11.  Lisa Sennett, a Human Resources employee, knew within five minutes that Plaintiff and Sutara were performing the same job duties.  Kennedy was not aware of Plaintiff's race at the time of his evaluation.

On or about February 16, 2004, Plaintiff wrote to Dick Muto, Vice President of Human Resources for Defendant, and complained that her manager created a hostile work environment, in that he was not "cordial" and "may have a personal issue with her."  She also noted that he would ignore her when she spoke with him, and further advised that Balbach had a lumbar chair removed from her office.  On April 1, 2004, Muto requested an investigation into the matter.

On or about March 25, 2004, Jeanine Very, a Supervisor, met with Plaintiff,

---

[5]Although ¶ 74 of Plaintiff's Statement of Material Facts contains a typographical error, she clearly intends to state that Sutara received a $1400 raise versus Plaintiff's $400 raise.  Neither party documents the timing of Sutara's $1400 raise, and so, viewing the facts in the light most favorable to Plaintiff, I must take into account the possibility that it occurred in September of 2003.

Sutara, and Heather Kolesar regarding a realignment of duties.[6]  Plaintiff was given several of Sutara's accounts, because Sutara was to take on other duties.   An April 5 e-mail from Very followed up on the meeting, and attached an assignment of duties.  The realignment of duties was, Very said, in connection with transition to taking on San Francisco co-pack operations.   Very acknowledged that the realignment was subject to change, once the new tasks were understood.  Neither Sutara nor Plaintiff ever actually took on the additional duties.  Further, Plaintiff never suffered any backlash for not taking on additional duties.

Plaintiff again wrote to Muto on March 31, 2004, complaining that the realignment of duties was retaliatory, and constituted harassment.  She also sent an April 23, 2004 e-mail to Chris Nettleton, stating her belief that she was being harassed, due to the reassignment of duties.

In addition to the above facts, this matter involves a series of positions for which Plaintiff was not promoted or hired.   Del Monte procedures state that a position will be posted for at least two weeks, and also states to employees, "apply within 15 business days of the posting date."

Plaintiff first avers that she, rather than Jeanine Very, was qualified for Supervisor of Co-Pack Accounting.  At the time the position was filled, Very had more than two years of experience as a Senior Inventory Accountant in the Finance Department.  A manager is free to fill a position without posting it, but they should

---

[6]Kolesar was a Co-Pack Accountant hired in that position, at a salary grade 11, on or about April 4, 2004.  On or about April 26, 2004, Robert Timmons was hired as a "Pineapple Accountant," at a salary grade 11.

consult with human resources.  Balbach believed that Very had the necessary experience, knowledge, and qualifications for a supervisor position; she had experience as a Senior Inventory Accountant, had worked closely with Balbach, and dealt with co-packers.  Balbach testified that Very's accounting experience in plants and distribution centers readily translated into co-pack accounting, because both involve manufacturing processes performed by entities that are not company owned.  Balbach did not consider Plaintiff for the position because he did not feel that she was ready to advance at that time. Plaintiff does not aver that she applied for the Supervisor position.

Plaintiff also believes that she, rather than successful candidate Patty DeBonis, was qualified for a Co-Pack Analyst, Associate III position.  Plaintiff asserts that the position was posted on February 24, 2004; Defendant asserts that the position was posted on February 6, 2004, and modified on February 24, 2004.[7]    Defendant's written procedures authorize a two-week posting as well as a 15-business-day application period for employees.  The job was first offered to Bridget Uhrig, who had applied for a Co-Pack Analyst position on February 9, 2004, and whose resume was sent to hiring managers on February 22, 2004.  She was interviewed on March 2, 2004, and declined the offer on April 8, 2004.  Uhrig remained in her then-present position, and, due to management override, on March 4, 2004, her salary grade was

---

[7]Neither party's record citations fully clarify whether the position was posted or modified on February 24, 2004.   A Co-Pack Analyst position was posted on February 6, 2004, with a mistaken salary grade of 12.  Heather Kolesar, who apparently applied for and received the job, was subsequently subject to a job title change of Co-Pack Accountant, and a salary grade of 11.  It is unclear how Kolesar's job posting was related to the February 6, 2004 posting at issue here.

changed from a 10 to a 13.

DeBonis was next in line for the position.  DeBonis had been identified as a qualified candidate for a finance position on February 17, 2004, the date she interviewed.  Plaintiff applied for the position on March 10, 2004.   At that time, no further applications were being reviewed. Moreover, one of the principal accountabilities of the position was forecasting, which DeBonis had previously done for Heinz; in contrast, Co-Pack Accountants do no forecasting whatsoever.  Plaintiff had a master's degree and two years of co-pack experience, and De Bonis had a bachelor's of science degree and no previous co-pack experience.

Plaintiff filed an EEOC charge in on or about May 28, 2004.  Lisa Sennett, a Human Resources employee, wrote in her notes, "[check mark] e-mail when we interviewed Patty DeBonis [star] try to show we offered job before KE applied."  The notes were prepared in connection with responding to Plaintiff's EEOC charge.

Finally, on June 24, 2004, Plaintiff applied for a Manager 1, Senior Business Analyst position, but was not interviewed.  The position had been posted on May 19, 2004, and by June 25, 2004, Defendant had already decided to extend an offer to someone, and nobody else was being given the opportunity to interview.  By the morning of June 25, 2004, after two rounds of interviews, Frank Gill had been identified as the first choice to fill the position, and Bob Amoroso was the second. When Gill declined, the position was offered to Amoroso on July 6, 2004.  Amoroso had ten years of demand and supply planning experience, including experience in forecasting.    The position at issue was in Demand Planning, and included

forecasting activities.   The requirements for the position included three to five years of related experience, along with demonstrated proficiency in forecasting. Plaintiff has no knowledge about Amoroso's qualifications or experience, but believes that she was more qualified because she had an MBA and was more familiar with Defendant's business.

Finally, Plaintiff complains of several acts of alleged harassment and/or retaliation.  On February 5, 2004, after telling Plaintiff that she could not close her door at lunchtime, Balbach sent an e-mail regarding the "open door policy" to all of the employees in his group.   Moreover, Plaintiff's corporate credit card was cancelled in April of 2003.   At least five other employees in her department did not have a corporate credit card, and Kolesar's was taken from her in 2003.   Plaintiff did not attend certain meetings, and a lumbar chair and caller ID telephone were removed from her office, prior to February 16, 2004.

In late August of 2004, she began a leave of absence due to illness.   Defendant does not argue that Plaintiff failed to fulfill administrative requirements with respect to her claims.  This litigation followed.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to

the party opposing the motion.  <u>International Raw Materials, Ltd. V. Stauffer Chem</u>
<u>. Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party bears the burden of
demonstrating the absence of any genuine issues of material fact.  <u>United States v.</u>
<u>Onmicare, Inc.</u>, 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails
to make a showing sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of proof.  <u>Celotex</u>
<u>Corp. V. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).  The sum of the
affirmative evidence to be presented by the non-moving party must be such that
a reasonable jury could find in its favor; it cannot simply reiterate unsupported
assertions, conclusory allegations, or suspicious beliefs.  <u>Groman v. Township of</u>
<u>Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Only evidence which is admissible at trial
can be considered in ruling on a motion for summary judgment.  <u>Bouriez v. Carnegie</u>
<u>Mellon Univ.</u>, No. 02-2104, 2005 U.S. Dist. LEXIS 18324, at *25 (W.D. Pa. Aug. 26, 2005).

### III.  <u>DISCRIMINATION CLAIMS</u>

The now-familiar <u>McDonnell-Douglas</u> paradigm is applicable to Plaintiff's
discrimination claims under Title VII and the PHRA, as well as her retaliation claim.
<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817
(1973) (Title VII),  <u>Moss v. Potter</u>, No. 05-4021, 2006 U.S. App. LEXIS 9601, at *5 (3d Cir.
Mar. 23, 2006) (retaliation); <u>Tomasso v. Boeing</u> Co., 445 F.3d 702, 703 (3d Cir. 2006)
(PHRA).

In the context of <u>McDonnell-Douglas</u> and a claim of discrimination, "the

precise elements of a plaintiff's prima facie case may vary with the particular circumstances." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 n.3 (3d Cir. 1995). If the Plaintiff meets the burden of her prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.   McDonnell Douglas, 411 U.S. at 802.

The employer satisfies  its burden of production by introducing evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 125 L. Ed. 2d 407, 113 S. Ct. 2742, 2748 (1993). The employer need not prove that the tendered reason actually motivated its behavior, because the ultimate burden of proving intentional discrimination always rests with the plaintiff.  See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).   I must accept Defendant's proffer without measuring its credibility. Hicks, 509 U.S. at 509.

Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must now show that the employer's explanation is pretextual.  Plaintiff may do this by pointing to "some evidence, direct or circumstantial, from which a factfinder could either 1) disbelieve the employer's articulated reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F. 3d 151, 166 (3d Cir. 1999).

More   specifically,   Plaintiff   must   "demonstrate   such   weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Evans v. Pennsylvania Power & Light Co.</u>,98 Fed. Appx. 151, 155 (3d Cir. 2004). "In simpler terms, the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." <u>Keller v. Orix Credit Alliance</u>, 130 F.3d 1101, 1111 (3d Cir. 1997). Nevertheless, even if a plaintiff's evidence "permits a tenuous inference of pretext and, by extension, discrimination," the evidence may "be insufficient as a matter of law to support a finding of discrimination." <u>Travis v. Board of Regents of the Univ. of Tex. Sys.</u>, 122 F.3d 259, 263 (5th Cir. 1997).

Additionally, "if the aggrieved employee can raise evidence sufficient 'to discredit the [employer's] proffered reasons...the [employee] need not also come forward with additional evidence of discrimination beyond his . . . prima facie case' in order to survive summary judgment." <u>Fasold v. Justice</u>, 409 F.3d 178, 185 (3d Cir. 2005).

## A. <u>FAILURE TO PROMOTE</u>

I first address Plaintiff's claim that Defendant's failure to promote, interview, or hire her for various positions resulted from illegal gender or racial discrimination.

In a case such as this, the plaintiff must carry the initial burden of establishing a prima facie case of unlawful discrimination. Therefore, the plaintiff must establish that she 1) belongs to a protected category; 2) applied for and was qualified for a

job in an available position;  3) was rejected;  and 4) after the rejection, the position remained open and the employer continued to seek applications for the position from persons with plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802.  The position must be available and open, and the plaintiff must show that she communicated to the prospective employer his interest in the position. Parker v. University of Pa., 128 Fed. Appx. 944, 946 (3d Cir. 2005).  The framework thereafter follows the McDonnell Douglas paradigm.

Whether a  court thinks that  an employer misjudged a plaintiff's qualifications does not, in itself, make the employer's legitimate reasons unworthy of credence. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F. 2d 509, 531 (3d Cir. 1993). A district court is not a "super-personnel" department that may second-guess the employer's business judgment. Brewer v. Quaker State Oil Refining Corp., 72 F. 3d 326, 332 (3d Cir. 1995). Courts are, therefore, to exercise caution when intruding into subjective employment decisions. See Ezold, 983 F. 2d at 527.  Moreover, Plaintiff's own opinions and beliefs regarding her qualifications do not create a genuine issue of material fact regarding whether Defendant's proffered reasons are a pretext for discrimination. See, e.g., Holifield v. Reno, 115 F. 3d 1555, 1565 (11th Cir. 1997); Ost v. West Suburban Travelers Limousine, Inc., 88 F. 3d 435, 441 (7th Cir. 1996); Evans v. Technologies Applic. & Serv. Co., 80 F. 3d 954, 960-61 (4th Cir. 1996).

"[E]mployers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly differences in assessment) do not matter." Kuhn v. Ball State

14

Univ., 78 F.3d 330, 331-32 (7th Cir. 1996). In other words, subjectivity in employment decisions is unlawful only if it is used as a mechanism for discrimination. Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir. 1986).

### 1. Supervisor of Co-Pack Accounting

I first address Plaintiff's allegations that Defendant illegally failed to promote her to Supervisor of Co-Pack Accounting, rather than Jeanine Very.   Plaintiff does not allege that she applied for the position, or otherwise made her interest known to Defendant.   Therefore, this claim fails at the prima facie stage.   Even if she survived that stage, however, Plaintiff fails utterly to rebut Defendant's legitimate explanation for its decisions: that Very had desirable experience that translated well into the co-pack setting, that management was permitted to fill the job without posting it first, and that Balbach felt Plaintiff was not ready to advance.  Plaintiff's subjective opinion of the relative merits of her and Very's qualifications simply does not create an issue that precludes the entry of judgment against her on this matter.

### 2. Co-Pack Analyst

Next, I address Plaintiff's claim based on her March 10, 2004, application for a Co-Pack Analyst position, which was either first posted on February 6, 2004, and then modified on February 24, 2004, or was first posted on the latter date. The position was offered initially to Bridget Uhrig, whose resume was sent to hiring managers on February 22, 2004, and then to Patty DeBonis, who had interviewed for such a position on February 17, 2004.   Plaintiff was not interviewed for the position. Defendant undermines Plaintiff's prima facie case, and also meets its burden of

production, through the undisputed fact that it was no longer reviewing applications by March 10, 2004, when Plaintiff applied.  Therefore, Plaintiff cannot show that Defendant continued to seek applications after Plaintiff was rejected, or that she applied for an open and available position.  Moreover,  Defendant also describes the preferred qualifications of both Uhrig and DeBonis, and Plaintiff's lack of forecasting experience.

Plaintiff nevertheless attempts to show pretext by relying on her subjective opinion that she was more qualified for the position than DeBonis.  Moreover, she points to a single observation in Sennett's notes, which were prepared after Plaintiff's EEOC charge.  Plaintiff avers that those notes demonstrate a "cover up." Any implication raised by Sennett's notes is far too tenuous to sufficiently discredit Defendant's proffer.   Similarly, even if the position was in fact a second Co-Pack Analyst position posted on February 24, 2004, that later date would not damage Defendant's position that it initially screened and selected Uhrig and DeBonis in connection with the February 6 posting; indeed, Defendant's written procedures authorize a two-week posting as well as a 15-business-day application period for employees.  Therefore, the fact that Defendant followed one procedure and not the other does not suggest that its explanation is so plainly wrong that it cannot have been the real reason for the hiring decision.  Under the circumstances, a reasonable jury could not decide that Defendant's proffered reasons are pretextual.

3.  **Senior Business Analyst**

Finally, I address Plaintiff's allegation that on June 24, 2004, she applied for a

16

Senior Business Analyst position posted on May 19, 2004, but was not interviewed due to illegal discrimination; instead, Robert Amoroso, a male, was hired.[8]   Again, Defendant both undermines Plaintiff's <u>prima facie</u> case and meets its burden of production. It is undisputed that Human Resources was no longer reviewing resumes at the time that Plaintiff applied, and that the first and second choices to fill the position - the second being Amoroso - had already been identified by the morning of June 25, 2004.   When the first choice declined, Defendant offered the position to Amoroso, who had significant experience related to the open position.

To discredit this explanation, Plaintiff asserts that Defendant offered the position to Amoroso instead of following its usual protocol of going back and reviewing other resumes after an offer is declined; she also argues that she was more qualified for the position because of her Master's degree.  That Defendant did not go back and review resumes again does not undermine its proffered reason, however, because it is undisputed that Amoroso had already been selected as second choice.   Also, again, Plaintiff's subjective opinions regarding her qualifications are not persuasive here.  Therefore, Plaintiff does not demonstrate any weakness in Defendant's explanation, such that a reasonable factfinder could rationally find it unworthy of credence.

At this point, I note that Plaintiff's claim for gender discrimination appears to

---

[8]At one point, in what appears to be a typographical error, Plaintiff states the application date as June 25, 2004.

17

be based solely on Amoroso's hiring.[9]  As discussed above, Plaintiff has failed to

proffer evidence based on which Defendant's articulated legitimate explanation for

its decision could be disbelieved.

As a matter of law, Defendant is entitled to judgment on Plaintiff's claims

based on failure to hire, promote, and interview.

## B. COMPENSATION AND JOB TITLE

One way in which an employer may violate Title VII is by singling out a

member of a protected group for treatment less favorable than that received by

other similarly situated individuals, on the basis of an impermissible criterion such

as race or gender.  EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990).

A central theme of Plaintiff's Complaint surrounds differences between

Plaintiff's compensation and job titles and that of Anita Sutara, a white female.  I

first address, therefore, Plaintiff's claims for race discrimination surrounding those

differences.[10]   Defendant argues that Plaintiff has failed to demonstrate that race

---

[9]I assume that Plaintiff has chosen not to pursue other alleged incidents of gender discrimination, as she does not produce evidence that any similarly situated male employee was otherwise treated preferentially.  Other Co-Pack Accountants are similarly situated persons for purposes of this litigation, pursuant to Order of Court dated September 19, 2005.  Robert Timmons was hired as a Pineapple Accountant, and Defendant terms him a similarly situated Co-Pack Accountant.  To the extent that he was in fact a Co-Pack Accountant similarly situated to Plaintiff, it is undisputed that he was the only similarly situated male, and was hired at a salary grade 11.
   Similarly, Plaintiff has failed to make a prima facie case under the Equal Pay Act, which required a showing that male employees were paid differently for performing equal work, which is "work of substantially equal skill, effort and responsibility, under similar working conditions."  EEOC v. Delaware Dept. Of Health and Social Servs., 865 F. 2d 1408 (3d Cir. 1989).  Therefore, to the extent that Plaintiff intended to pursue other gender claims, such claims are encompassed by my Order today.

[10]Notably, Plaintiff's belief that Defendant lowered Sutara's level so that they would not have to raise Plaintiff's cannot sustain a discrimination claim; the two were treated equally, rather than differently.  It is of no moment, in this context, whether this was done grudgingly.

played any role in the facts of this case. [11]

Plaintiff claims that Defendant discriminated against her due to race with respect to her job title and compensation, both initially and as an ongoing matter.  Defendant proffers the legitimate reason that Plaintiff's initial salary grade assignment was due to error, and that the time lag in correcting that assignment was due to turmoil in Human Resources.  Indeed, Defendant proffers legitimate business reasons for every one of its decisions and actions at issue. It is not clear, however, that Defendant's proffered reasons bear on all of the distinctions between Plaintiff and Sutara's compensation and job titles.  Defendant does not discuss, for example, the fact that Sutara and Plaintiff performed the same duties but were titled and compensated differently.  Even assuming that Defendant met its burden of production on that point, taken along with the relatively lengthy time period between Plaintiff's complaint about salary grade and the grade adjustment, and the potential confusion about the notations on Sutara's PAN, this could reasonably lead one to qustion Defendant's proffered reasons.

Considering all of the circumstances under applicable standards, therefore, genuine issues of material fact exist that bear on the veracity of Defendant's explanations for Plaintiff's various charges of race discrimination with respect to

---

[11]Defendant also argues that because it made Plaintiff whole, her compensation claims are moot.  Not so, because, for example, punitive damages are available under Title VII. Nkwenti-Zamcho v. Pa. College of Tech., No. 4:05-CV-2200, 2006 U.S. Dist. LEXIS 18530 (E.D. Pa. Mar. 3, 2006.

compensation and job title.[12]  Viewing the facts in a light most favorable to Plaintiff, summary judgment is inappropriate on this point.  Therefore, I will deny the Motion to that extent.

## IV.  HOSTILE WORK ENVIRONMENT

Plaintiff claims that she was subjected to a hostile work environment based on race and gender, because Defendant excluded her from meetings, deprived her of a caller ID telephone, removed a lumbar chair from her office, revoked her corporate credit card, and enforced an "open door" policy against her.

In order to prevail on her claims of race or gender discrimination and hostile work environment, Plaintiff must prove that 1) she suffered intentional discrimination because of her race or gender; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected her; 4) it would have detrimentally affected a reasonable person in like circumstances; and 5) a basis for employer liability is present. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006); Swingle v. Henderson, 142 F. Supp. 2d 625, 633-34 (D.N.J. 2001).     In connection with the first factor, a "plaintiff must show that race is a substantial factor in the discrimination and that, if the plaintiff had been of another race, he would not have been treated in the same manner.  Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts."  Laye v. Potter, No. 02-04cv0046, 2006 U.S. Dist. LEXIS

---

[12]Plaintiff's internal complaints do not specifically refer to gender or race discrimination. Defendant characterizes the complaints as "purportedly" protected, but does not argue that they were unprotected under Title VII.

36028 , at *16 (W. D. Pa. June 2, 2006) (citations omitted).

In analyzing a hostile work environment claim, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).   A court should be mindful that "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."   Davis v. City of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).  Only behavior that "transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." Annis v. County of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994).

Otherwise stated, in order to demonstrate a hostile work environment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. at 21.

As a matter of law, the actions identified by Plaintiff are not severe and pervasive enough to make out a claim for a hostile work environment.  Instead, while perhaps unpleasant and suggestive of personal tensions or dislikes, the acts complained of do not rise to the required level; Plaintiff's subjective feelings of isolation do not suffice.  The acts complained of were not physically threatening or humiliating; nor, in this context, were they severe, frequent, or offensive in nature.

Additionally, there is no evidence that the conduct unreasonably interfered with Plaintiff's work performance.  For example, she had a telephone, albeit one without a caller identification feature; she ultimately received her lumbar chair, and does not aver that she was unable to work without it during the brief period of deprivation; the open door at lunchtime certainly caused no significant hardship; and Plaintiff admitted that her job did not suffer due to her lack of participation in the meetings at issue.

There is no genuine issue of material fact that would preclude the entry of judgment on this claim; as a matter of law, Plaintiff cannot proceed therewith.

## V. <u>RETALIATION</u>

Finally, I address Plaintiff's allegations that Defendant retaliated against her for complaining to Muto on February 16, 2004, and March 31, 2004.  In this context, Plaintiff must show that: (1) she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with her protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. <u>See</u>, <u>e.g.</u>, <u>Kachmar v. Sungard Data Systems, Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).  Title VII prohibits retaliatory conduct other than discharge or failure to hire "only if it alters the employee's compensation, terms, conditions, or privileges of employment,...or adversely affects his status as an employee." <u>Viggiani v. New Jersey</u>, 136 Fed. Appx. 515, 518 (3d Cir. 2005).  Once Plaintiff makes a <u>prima facie</u> case, the claim follows the <u>McDonnell Douglas</u> burden-shifting paradigm..

22

Plaintiff's claim of retaliation focuses on Very's stalled redistribution of co-pack duties, and the failures to promote, interview, and hire.  I will assume, for present purposes, that the facts are sufficient to make out a <u>prima facie</u> case of retaliation.   As discussed above, however, Defendant has proffered a legitimate explanation for each failure to hire complaint of; Plaintiff, in turn, has failed to raise a genuine issue of material fact regarding pretext.  Moreover, as regards the redistribution of duties, it is undisputed that Plaintiff never in fact took on any additional duties or suffered any adverse consequences as a result.  Therefore, the redistribution cannot be considered prohibited retaliatory conduct.  Similarly, to the extent that Plaintiff intends to rely on the allegedly harassing acts such as removal of her credit card, caller ID phone, and lumbar chair, those acts occurred prior to her initial February 16 complaint.  Therefore, they cannot have been done in retaliation for that complaint.  For these reasons, Plaintiff cannot, as a matter of law, proceed on her retaliation claim.

<u>**CONCLUSION**</u>

In sum, there is no genuine issue of material fact regarding Plaintiff's claims for gender discrimination, harassment, failure to promote or hire, and retaliation.  Plaintiff has failed either to meet her <u>prima facie</u> burden, or has failed to adduce evidence sufficient to demonstrate such implausibilities in the Defendant's proffered  legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.  With respect to her harassment and retaliation claims, she has failed to create any genuine issue of material fact that

23

would preclude the entry of judgment.   I will therefore grant Defendant's Motion for Summary Judgment to that extent.   There remain, however, genuine issues of material fact regarding Plaintiff's claims of race discrimination with respect to her compensation and job title.

An appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


KIMBERLY EASON,                                    )
                                                   )
                                                   )
                        Plaintiff,                 )
        -vs-                                        )
                                                     Civil Action No.  04-1698
                                                   )
                                                   )
                                                   )
                                                   )
DEL MONTE FOODS,                                   )
                                                   )
                                                   )
                                                   )
                        Defendant.                 )


AMBROSE, Chief District Judge.


# ORDER OF COURT

AND NOW, this **14th**  day of September, 2006, it is ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.  The Motion is GRANTED as to Plaintiff's claims for hostile work environment; failure to promote, interview, and hire; retaliation; and gender discrimination; it is DENIED in all other respects, and Plaintiff may proceed with her race discrimination claims regarding her compensation and job title.

It is further ORDERED that a Pretrial Conference is scheduled for Friday, September 29, 2006, at 9:15 A.M. before the undersigned.  Position papers are to be

faxed three (3) days prior to the conference.  Counsel shall have settlement authority and parties should be either present or available by telephone.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge